**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY BENDIX, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| FERRARA CANDY COMPANY, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Kimberly Bendix, by and through her attorneys, Pedersen & Weinstein LLP, for her Complaint against Defendant, Ferrara Candy Company, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action under the Americans with Disabilities Act ("ADA") and the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, ("Title VII") to challenge Defendant's unlawful discrimination against her based on disability and gender, as well as the retaliation she suffered as a result of opposing the illegal conduct. Plaintiff also asserts claims under the Family and Medical Leave Act ("FMLA"), the Illinois Human Rights Act ("IHRA"), and federal and state equal pay laws. In addition, Plaintiff brings claims under Illinois common and statutory law because Defendant fired her for opposing other unlawful conduct by the company.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent and supplemental jurisdiction.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §

1391(a).

## PARTIES

4.      Plaintiff, Kimberly Bendix, was formerly employed by Defendant as a Human Resources Manager for its plant in Itasca, Illinois.  Plaintiff began her employment in April 2023 and was unlawfully fired in May 2024.

5.      Defendant, Ferrara Candy Company, is a candy making company.  Headquartered in Chicago, Illinois, it has several factories in the Chicagoland area, including Itasca where Plaintiff worked, as well as Mexico.  It employs over 8,300 employees worldwide and in 2023 it generated gross revenues of $1.8 billion.

6.      At all times relevant to this Complaint, Defendant employed more than 15 employees and was engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment With Defendant*

7.      As a Human Resources Manager, Plaintiff's job entailed overseeing and implementing human resource processes and initiatives for employees at the Itasca plant.  Over time, Plaintiff was also assigned additional duties unrelated to human resources, including various operations tasks like scheduling and safety walks.  Despite the increased responsibilities, and being short-staffed throughout her employment, Plaintiff enjoyed her job and performed it well.

8.      Based on her qualifications and proficiency at her job, Plaintiff had every reason to anticipate a long and successful career with Defendant.  Notwithstanding her impressive work performance, however, Defendant subjected Plaintiff to unlawful discrimination and retaliation and ultimately forced her out of the organization.

2

***Defendant Discriminated Against Plaintiff Based On Disability***

9. Despite her commendable job performance, Defendant discriminated against Plaintiff based on her disability and/or perceived disability. More specifically, in June 2023, Plaintiff was diagnosed with attention-deficit/hyperactivity disorder ("ADHD"), a neurodevelopmental disorder that affects a person's ability to focus, control impulses, and be still, and with autism spectrum disorder ("ASD"), another neurodevelopmental disorder that affects social interaction, communication, and behavior. Plaintiff has also been diagnosed with Hashimoto's Thyroiditis, an autoimmune disorder in which antibodies attack and damage one's thyroid gland.

10. A few months after being diagnosed with ADHD and ASD, Plaintiff disclosed her disabilities to Defendant. Plaintiff was able to perform her job and initially did not need any reasonable accommodations; rather she simply wanted to make Defendant aware of her disabilities in case there were any concerns with her communication style and/or social interactions.

11. As a result of disclosing these disabilities to Defendant, however, Plaintiff's supervisors began treating her with hostility that worsened over time and culminated in her unlawful termination.

12. Further, because of other unlawful conduct occurring within the organization as described herein, Plaintiff eventually needed reasonable accommodations to perform her job. The accommodations became necessary not only because Defendant's unlawful conduct was exacerbating Plaintiff's disabilities, but also because it created additional health problems for Plaintiff. In particular, in early February 2024, Plaintiff experienced a medical event at work due to a flare up of her Hashimoto's Thyroiditis and had to leave early to seek medical treatment.

3

13. Thereafter, Plaintiff's doctor advised her to wear a heart monitor for two weeks and to reduce her stress, among other recommendations. Consequently, Plaintiff notified Itasca Plant Director Joe Malesic ("Malesic"), Human Resources Director Bob Grganto ("Grganto"), and Senior Human Resources Director Melanie Pierucci ("Pierucci") that, among other things, she needed to reduce her stress levels and adhere to a strict sleeping schedule. Plaintiff also advised them that she needed other reasonable accommodations to continue working, namely not being required to work onsite more than 8-9 hours a day and not working during the third shift, at least temporarily until more medical testing could be done.

14. Malesic, Grganto, and Pierucci initially told Plaintiff that Defendant would and could readily provide these accommodations, but soon thereafter they reneged without explanation and Malesic informed Plaintiff that she needed to work during the third shift and on weekends. More specifically, on February 9, 2024, just 2 days after requesting the accommodations described above, Malesic told Plaintiff that employees on the third shift were complaining about not being able to talk with human resources and that she needed to be available to them.

15. Plaintiff was troubled by Malesic's directive, not only because it had never been a requirement of her job when she was first hired, but also because Defendant was fully aware of why she needed the accommodations and its sudden refusal to honor them reflected an intent to drive her out of the company.

16. Plaintiff responded to Malesic that she could not physically do what he was demanding. She then reached out to Grganto and Pierucci to tell them about Malesic's directive and that she believed it to be "a complete 180 from what was discussed" before. Neither Grganto nor Pierucci acknowledged or responded to Plaintiff's report of Malesic rescinding the

accommodations she supposedly had just been granted.

17.     Indeed, Defendant failed to engage in any interactive process with Plaintiff whatsoever, a blatant violation of federal and state law.

18.     Thereafter, in April 2024, Plaintiff requested a leave of absence under the FMLA. Plaintiff submitted the request because of her disabilities and Defendant's refusal to grant her reasonable accommodations.  As explained below, Defendant abruptly fired her shortly after she made that request.

***Defendant Discriminated Against Plaintiff Based On Gender***

19.     In addition to the foregoing, Defendant also subjected Plaintiff to discrimination based on her gender.  For example, towards the end of 2023, Plaintiff learned that Defendant was paying her male peer, the human resources manager for the Bellwood, Illinois plant, more than it was paying her.  Plaintiff was concerned about the pay differential, especially since she had to do more work than the male employee as he had a fully staffed HR department and she did not, and both of them had been hired around the same time and by the same person (Human Resources Director Grganto).  As explained below, Plaintiff questioned the pay disparity but did not receive a legitimate explanation.

20.     Defendant otherwise fosters an environment in which male employees are treated more favorably than female employees.  To be sure, the Bellwood HR manager referenced above described the work environment at the company as "toxic" and a "boys club." He also confirmed that Defendant tolerates racist comments and opinions, as well.  The Bellwood HR manager ultimately resigned – citing these as reasons for his departure, among others – and reported his concern to Defendant that executives who make sexist comments are not disciplined for their behavior because Defendant's top leadership considers them "essential to the business."

5

21.     Consistent with this toxic culture for women and minorities, Plaintiff was treated poorly by Defendant and the cumulative effect of all the actions taken against her as described herein created a hostile working environment.

***Plaintiff Opposed Defendant's Discriminatory Conduct***
***And Defendant Retaliated Against Her As A Result***

22.     Following some of the incidents described above, Plaintiff complained about the unlawful discrimination, but to no avail.  For example, in January 2024, after learning of the pay disparity between her and her male colleague, Plaintiff expressed her concern about it to Grganto and asked for an explanation of how the salaries were decided; Grganto refused to provide one and claimed vaguely that there was no "formal" way the salaries were decided.  He did, however, demand to know how Plaintiff had found out about the pay differential and also made it clear that Plaintiff would not receive a pay raise to bridge the wage gap.

23.     For further example, in February 2024, after Plant Director Malesic suddenly backtracked on granting the reasonable accommodations that Plaintiff had requested because of her disabilities, she reported his behavior to Grganto and Pierucci.

24.     Plaintiff also opposed other instances of discriminatory behavior she witnessed during her employment.  For example, in August 2023, Plaintiff opposed Defendant's practice of paying male supervisors at the Itasca plant overtime wages, despite the men purportedly being exempt from overtime laws, while not paying the only female supervisor similar overtime wages.

25.     For further example, during a workshop in or around September 2023, a consultant Defendant hired suggested to employees that they make task lists to stay on track with their work.  A male employee responded to the suggestion by saying, "Where I'm from, only retards make tasks lists and I'm not a retard," or words to that effect.  Plaintiff was stunned by the offensive remark, particularly since she had recently been diagnosed with neurodivergent

disorders, and immediately protested it to both the consultant and to Malesic. She also reported it to Grganto.

26.     Plaintiff had hoped on each occasion that Defendant would take appropriate remedial action in response to her reports of unlawful discrimination, but it did not. Instead, Defendant retaliated against Plaintiff.

27.     Defendant's retaliation against Plaintiff consisted of some of the adverse actions described above, as well as increasingly hostile treatment of Plaintiff by her supervisors.

28.     Defendant also issued Plaintiff a sham performance review in early 2024 – days after she asked about the pay disparity between her and her male colleague – claiming she was not meeting expectations, despite having rated her highly during her mid-year review before most of the issues described herein occurred.

29.     Two days after receiving the sham review, Plaintiff asked Grganto and Pierucci why she had not received any coaching, warning, or documentation that her performance was unsatisfactory prior to the poor review; Grganto answered simplistically that he was busy. Plaintiff also opposed the discriminatory review in writing, noting several examples of the unlawful conduct she was experiencing and/or otherwise dealing with, but Defendant ignored her and only subjected her to further discrimination and retaliation.

30.     As further retaliation and discrimination, Defendant also took actions to undermine and embarrass Plaintiff in front of the workforce. For example, Malesic frequently gave incorrect information to factory workers about Defendant's PTO policy. His behavior caused confusion and frustration among employees, and then he unjustly blamed Plaintiff for the problems he created. On one occasion, he forced Plaintiff to make a presentation of the PTO policy to employees (which differed from the incorrect one he had been relaying to employees)

7

and then publicly jeered her when employees naturally were upset. Malesic then grabbed the microphone out of Plaintiff's hands, saying "you've done enough," or words to that effect, which in turn incited employees to clap and boo her off the stage.

31.     On or about April 17, 2024, Plaintiff reported the ongoing discrimination and retaliation against her to Malesic and Grganto, but Defendant once again failed to take appropriate remedial action. Instead, as explained below, it fired her a few weeks later.

***Defendant Unlawfully Fired Plaintiff***

32.     Ultimately, as further discrimination and retaliation, Defendant abruptly fired Plaintiff on May 6, 2024, claiming vaguely it was for "poor performance." This explanation is pretext. Prior to her termination, Plaintiff had received no warning that her job was in jeopardy and had not been placed on a performance improvement plan or any other corrective action.

33.     Given all the circumstances, including Defendant's refusal to provide reasonable accommodations to Plaintiff despite knowing that she needed them and its failure to engage in any interactive process whatsoever, combined with the company's creation of a hostile work environment and its abject hostility towards Plaintiff in response to her reports of unlawful conduct occurring within the company and the pretextual nature of its proffered justification, it is clear that Defendant fired Plaintiff because of her disability and gender, as well as in retaliation for opposing unlawful discrimination.

***Post-Employment Discrimination And Retaliation***

34.     Defendant continued to discriminate and retaliate against Plaintiff after firing her. For example, after Plaintiff protested her unlawful termination and informed Defendant that she had evidence of its unlawful conduct, Director of Human Resources Courtney Catcho ("Catcho") threatened Plaintiff by demanding that she return any such evidence and accusing her of theft.

8

Catcho further told Plaintiff, "I trust that we don't have to get legal involved for a more formal process to ensure [Defendant] has this property."

35. Defendant's threat was obviously an attempt to intimidate Plaintiff from speaking about what happened to her and pursuing her claims.

36. As further evidence of Defendant's animus toward Plaintiff, the day she was fired, Defendant allowed one of its employees to post the following comments on Plaintiff's personal website:

> "Damn, it sucks you got termed today. Who are we going to laugh at now? Seeing how disgusting you've become with your photos all over online is so hilarious. I have to tell you, the management team loved talking so much shit about you. You fucking suck. We hope you're as miserable as you are fat. Take some of your useless 'life lessons' and apply them to your sad pathetic life."

These remarks are further evidence of Defendant's cruel and malicious mistreatment of Plaintiff.

### Defendant Violated The Family and Medical Leave Act

37. As noted above, after Defendant denied Plaintiff reasonable accommodations and failed to engage in the interactive process, Plaintiff informed Defendant of her intent to take a leave of absence under the FMLA once she became eligible to do so, i.e. after working for Defendant for one year.

38. On April 30, 2024, after Plaintiff submitted her formal request for FMLA leave, she was notified that she had become eligible for leave as of April 22, 2024, her one-year anniversary. Six days later, on May 6, 2024, Defendant abruptly fired her, as explained above. Defendant fired Plaintiff in retaliation for requesting FMLA leave and to interfere with her ability to take FMLA leave.

### Defendant Subjected Plaintiff To Other Unlawful Conduct

39. In addition to the adverse actions described above, Defendant also fired Plaintiff

9

for reporting and refusing to participate in other unlawful conduct in the workplace, giving rise to claims for retaliatory discharge under Illinois statutory and common law.

40.     For example, under Illinois' One Day Rest In Seven Act ("ODRISA"), employers are required to provide certain rest and meal periods for their employees.  In particular, ODRISA requires every employer to allow every employee at least 24 hours of rest for every 7 consecutive days worked (820 ILCS 140/2) and to provide specific meal breaks based on the number of consecutive hours worked (820 ILCS 140/3).

41.     Despite these clear mandates of law, Defendant routinely denied its employees these rest and/or meal periods.

42.     Plaintiff objected to Defendant's unlawful violations of ODRISA on several occasions throughout her employment.  For example, she reported the violations multiple times directly to her supervisors, including Malesic, Grganto and Pierucci, but Defendant continued to deny employees their proper rest and meal breaks.

43.     In October 2023, Plaintiff reached out to one of Defendant's attorneys about the issue, explaining that employees who were working 12-hour shifts were not getting the breaks she understood they should receive.  When Malesic learned Plaintiff had sought legal counsel and had reported what was happening in the factory, he became incensed with her, screaming at her and accusing her of trying to sabotage him.

44.     In March 2024, Plaintiff again reported Defendant's ongoing violations of ODRISA and informed her leadership that the potential penalties for the violations were then over $1 million.

45.     Later in March 2024, Plaintiff again protested the company's unlawful conduct when Malesic wanted Plaintiff to fire a forklift driver who had been in a work-related accident.

10

When Plaintiff reviewed the report of what happened, however, she refused to fire the employee because she saw that the employee had reported he was very tired at the time of the incident and had been required to work 12 hours straight, with no break as required by Illinois law.

46. Plaintiff also reported her concerns that Defendant was paying supervisors who were classified as exempt overtime wages. Plaintiff viewed this practice as problematic not only because it suggested that Defendant had unlawfully misclassified these employees, but also because Defendant was excluding the only female supervisor at the plant from this "benefit" and Plaintiff considered it gender discrimination against the female employee.

47. In retaliation for reporting and opposing these unlawful practices, as described above, Defendant treated Plaintiff with increasing anger and hostility, issued her a sham performance review, and abruptly fired her.

48. Given Defendant's steadfast refusal to address Plaintiff's concerns of unlawful conduct, the palpable hostility she encountered as a result of reporting the unlawful conduct, and the pretextual nature of her termination, there is no question that Defendant fired Plaintiff in retaliation for reporting and opposing unlawful conduct, in violation of Illinois law.

***Defendant Failed to Exercise Reasonable
Care To Prevent and Correct Unlawful Conduct***

49. Defendant's management directed, encouraged, and participated in the above-described unlawful conduct. Further, Defendant failed to exercise reasonable care to prevent and correct promptly any discrimination or harassment. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

50. The discrimination and retaliation described above was consistent with Defendant's standard operating procedure.

11

*Plaintiff Timely Filed A Charge of Discrimination and Retaliation*

51.     Plaintiff timely filed a charge of discrimination and unlawful retaliation with the EEOC.  Plaintiff subsequently requested and received her Notice of Right to Sue on or about July 31, 2025.

52.     The EEOC cross-filed Plaintiff's charge of discrimination with the Illinois Department of Human Rights ("IDHR") pursuant to the work-sharing agreement between the EEOC and IDHR.  After requesting and receiving her Notice of Right to Sue from the EEOC, Plaintiff submitted a Notice of Opt Out of IDHR's Investigative and Administrative Process to the IDHR so she may pursue her state law claims in court.  This Court has supplemental jurisdiction over Plaintiff's IHRA claims pursuant to 28 U.S.C § 1367(a).

*Plaintiff Suffered Damage*

53.     As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

54.     Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

55.     Plaintiff's career and reputation has been irreparably damaged as a result of Defendant's unlawful conduct.

56.     Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct.  Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

*Punitive Damages*

57.     Defendant acted and/or failed to act with malice or willfulness or reckless

indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### DISABILITY DISCRIMINATION
### IN VIOLATION OF THE ADA

58. Plaintiff realleges paragraphs 1 through 57 and incorporates them by reference into Count I of this Complaint.

59. The ADA, as amended by the ADAAA, 42 U.S.C. § 12112(a), provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment … whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102.

60. Plaintiff is a qualified individual with a disability as defined by the ADA.

61. Defendant is a covered employer under the ADA and knew of Plaintiff's disabilities.

62. By its conduct as alleged herein, Defendant violated the ADA.

## COUNT II

### FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADA

63. Plaintiff realleges paragraphs 1 through 62 and incorporates them by reference into Count II of this Complaint.

13

64. The ADA requires covered employers to make and provide reasonable accommodations to the known physical or mental limitations of otherwise qualified individuals with a disability.

65. Defendant knew of Plaintiff's disabilities but refused to make and provide reasonable accommodations.

66. By its conduct as alleged herein, Defendant violated the ADA.

## COUNT III

### RETALIATION IN VIOLATION OF THE ADA

67. Plaintiff realleges paragraphs 1 through 66 and incorporates them by reference into Count III of this Complaint.

68. The ADA, specifically 42 U.S.C. § 12203, makes it unlawful for any employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."

69. Defendant retaliated against Plaintiff for engaging in protected activity, namely her opposition to discrimination based on disability and requesting a reasonable accommodation. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the ADA.

## COUNT IV

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

70. Plaintiff realleges paragraphs 1 through 69 and incorporates them by reference into Count IV of this Complaint.

71. Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of sex. Title VII also prohibits sexual

14

harassment. Sexual harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII.

72. By the conduct as alleged herein, Defendant subjected Plaintiff to gender discrimination in violation of Title VII.

## COUNT V

### RETALIATION IN VIOLATION OF TITLE VII

73. Plaintiff realleges paragraphs 1 through 72 and incorporates them by reference into Count V of this Complaint.

74. Title VII, specifically 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

75. Defendant retaliated against Plaintiff for her complaints of discrimination. By the conduct described herein, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII.

## COUNT VI

### VIOLATION OF THE EQUAL PAY ACT

76. Plaintiff realleges paragraphs 1 through 75 and incorporates them by reference into Count VI of this Complaint.

77. The Equal Pay Act of the Fair Labor Standards Act, 29 U.S.C. Sections 206 and 207, makes it unlawful for an employer to pay lower wages or fringe benefits to employees of one sex than it does to similarly situated employees of the other sex.

78. Plaintiff was paid lower wages than a male employee in a substantially equal job even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility

15

of the male employee.

79.     The differential in pay between sexes was not pursuant to seniority, merit, quantity or quality of production, but was due to sex.

80.     Defendant intentionally paid Plaintiff less than it paid a male employee who was performing substantially equal work.

81.     By the conduct as alleged herein, Defendant willfully discriminated against Plaintiff with respect to her wages in violation of the Equal Pay Act.

## COUNT VII

### RETALIATION IN VIOLATION OF THE EQUAL PAY ACT

82.     Plaintiff realleges paragraphs 1 through 81 and incorporates them by reference into Count VII of this Complaint.

83.     The Equal Pay Act, 29 U.S.C. Section 215(a)(3), makes it unlawful for any person to discharge or in any manner discriminate against any employee because she complained of wage discrimination.

84.     Plaintiff complained of discriminatory wage practices.

85.     Defendant retaliated against Plaintiff for her complaints in violation of the anti-retaliation provisions of the Equal Pay Act.  By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the Equal Pay Act.

## COUNT VIII

### UNLAWFUL CONDUCT IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

86.     Plaintiff realleges paragraphs 1 through 85 and incorporates them by reference into Count VIII of this Complaint.

87.     The FMLA entitles eligible employees to a 12-week leave, including leave on an

16

intermittent basis, during any 12-month period for a serious health condition. Plaintiff was an eligible employee.

88. The FMLA also entitles any employee who takes such a leave to be restored to her former position or an equivalent position with equivalent terms and conditions of employment as her former position.

89. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the Act.

90. By its conduct as alleged herein, Defendant violated the FMLA.

91. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT IX

### RETALIATION IN VIOLATION OF THE
### FAMILY AND MEDICAL LEAVE ACT

92. Plaintiff realleges paragraphs 1 through 91 and incorporates them by reference into Count IX of this Complaint.

93. The FMLA makes it unlawful for an employer to retaliate against an employee for having exercised or attempted to exercise any rights under the FMLA. The FMLA also makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice it makes unlawful.

94. By the conduct described herein, Defendant violated the FMLA.

95. Defendant's actions toward Plaintiff constitute willful violations of the FMLA.

## COUNT X

### DISABILITY DISCRIMINATION
### IN VIOLATION OF IHRA

96. Plaintiff realleges paragraphs 1 through 95 and incorporates them by reference

into Count X of this Complaint.

97. The Illinois Human Rights Act, 775 ILCS 5/2-102(A) ("IHRA"), makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of disability.

98. Defendant is a covered employer under the IHRA and knew of Plaintiff's disabilities.

99. By the conduct as alleged herein, Defendant violated the IHRA.

## COUNT XI

### FAILURE TO ACCOMMODATE
### IN VIOLATION OF IHRA

100. Plaintiff realleges paragraphs 1 through 99 and incorporates them by reference into Count XI of this Complaint.

101. The IHRA requires employers to provide reasonable accommodations for known physical or mental limitations of otherwise qualified disabled employees.

102. Defendant knew of Plaintiff's disabilities but refused to make and provide reasonable accommodations.

103. By the conduct as alleged herein, Defendant violated the IHRA.

## COUNT XII

### GENDER DISCRIMINATION IN VIOLATION OF THE IHRA

104. Plaintiff realleges paragraphs 1 through 103 and incorporates them by reference into Count XII of this Complaint.

105. The IHRA, 775 ILCS 5/2-102(A), makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of sex. The IHRA, specifically 775 ILCS 5/2-102(D), further provides that "[i]t is a civil rights violation [f]or any

18

employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment."

106. By the conduct as alleged herein, Defendant subjected Plaintiff to sex discrimination, including sexual harassment, in violation of the IHRA.

107. Under the IHRA, Defendant is also strictly liable for the sexual harassment by its employees, whether or not it knew of the offending conduct.

## COUNT XIII

## RETALIATION IN VIOLATION OF IHRA

108. Plaintiff realleges paragraphs 1 through 107 and incorporates them by reference into Count XIII of this Complaint.

109. The IHRA, specifically 775 ILCS 5/6-101(A), makes it unlawful to retaliate against an employee who opposes what she reasonably and in good faith believes to be unlawful discrimination or because she has made a charge, filed a complaint, or participated in an investigation, proceeding, or hearing under the act.

110. Defendant retaliated against Plaintiff for engaging in protected activity, namely her opposition to discrimination based on disability and gender and requesting reasonable accommodations. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the IHRA.

## COUNT XIV

## VIOLATION OF THE ILLINOIS EQUAL PAY ACT

111. Plaintiff realleges paragraphs 1 through 110 and incorporates them by reference into Count XIV of this Complaint.

112. The Illinois Equal Pay Act, 820 ILCS 112/1 et seq., makes it unlawful for an

19

employer to pay lower wages to employees of one sex than it does to similarly situated employees of the other sex. It is also unlawful for an employer to discharge an employee for inquiring about or otherwise discussing her wages or the wages of any other employee.

113. Plaintiff was paid lower wages than a male employee in substantially equal jobs even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility of the male employee.

114. The differential in pay between sexes was not pursuant to seniority, merit, quantity or quality of production, but was due to sex.

115. By the conduct as alleged herein, Defendant willfully discriminated against Plaintiff with respect to her wages in violation of the Illinois Equal Pay Act.

## COUNT XV

### RETALIATION IN VIOLATION OF THE ILLINOIS EQUAL PAY ACT

116. Plaintiff realleges paragraphs 1 through 115 and incorporates them by reference into Count XV of this Complaint.

117. The Illinois Equal Pay Act, 820 ILCS 112/10, makes it unlawful for any person to discharge or in any manner discriminate against any employee because she complained of unfair wage practices.

118. Plaintiff complained of unfair wage practices.

119. Defendant retaliated against Plaintiff for her complaints in violation of the anti-retaliation provisions of the Illinois Equal Pay Act. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the Illinois Equal Pay Act.

## COUNT XVI

## RETALIATORY DISCHARGE IN VIOLATION OF ILLINOIS COMMON LAW

120.    Plaintiff realleges paragraphs 1 through 119 and incorporates them by reference into Count XVI of this Complaint.

121.    At all material times, it was the clear mandate of the public policy of the State of Illinois that employers allow every employee at least 24 hours of rest for every 7 consecutive days worked and to provide specific meal breaks based on the number of consecutive hours worked.  This policy is enunciated, among other places, in ODRISA, 820 ILCS 140/2 and 140/3.

122.    At all material times, it was the clear mandate of the public policy of the State of Illinois that employers not discriminate against employees based on gender, including with respect to the payment of wages.  This policy is enunciated, among other places, in Title VII, 42 U.S.C. Section 2000e et seq., the Equal Pay Act of the Fair Labor Standards Act, 29 U.S.C. Sections 206 and 207, the IHRA, 775 ILCS 5/2-102(A), and the Illinois Equal Pay Act, 820 ILCS 112/1 et seq.

123.    Plaintiff had a good faith belief that Defendant's refusal to schedule employees properly and/or its refusal to grant employees their legally mandated breaks violated Illinois law. Plaintiff also had a good faith belief that Defendant's conduct of paying male managers "overtime" pay but not paying the only female manager "overtime" pay violated federal and state law.

124.    Plaintiff engaged in protected activity by protesting and reporting Defendant's unlawful behavior.

125.    Defendant retaliated against Plaintiff for protesting and reporting its unlawful conduct by terminating her employment.  The discharge violates a clear mandate of public

21

policy.

## COUNT XVII

### VIOLATION OF ILLINOIS WHISTLEBLOWER ACT

126.     Plaintiff realleges paragraphs 1 through 125 and incorporates them by reference into Count XVII of this Complaint.

127.     The Illinois Whistleblower Act, 740 ILCS 174/20, ("IWA") provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation."

128.     Defendant retaliated against Plaintiff for refusing to participate in the activities described herein that would result in violations of Illinois law.  More specifically, Plaintiff made it clear that she would not engage in conduct that violated ODRISA and would not condone unlawful discrimination against female employees.  Plaintiff also refused to participate in Defendant's attempt to discipline an employee who had been denied his rights under ODRISA. As a result, and as set forth above in greater detail, Defendant fired Plaintiff.

129.     By its conduct, Defendant violated the IWA.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a.     Declare that the acts and conduct of Defendant violate the ADA, Title VII, the EPA, the FMLA, the IHRA, the Illinois EPA, the IWA, and Illinois common law;

b.     Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c.     Award Plaintiff the value of all compensation and benefits she will lose in the

22

future as a result of Defendant's unlawful conduct;

      d.      In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

      e.      Award Plaintiff compensatory damages;

      f.      Award Plaintiff punitive damages;

      g.      Award Plaintiff liquidated damages;

      h.      Award Plaintiff prejudgment interest;

      i.      Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

      j.      Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  October 16, 2025

              Respectfully submitted,

              By:

                    */s/Erika Pedersen*
                    Attorney No. 6230020

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
231 S. LaSalle Street
Suite 2100
Chicago, IL  60604
(312) 322-0710

23